J-A13015-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYRIK LAMAR JONES | : | |
| | : | |
| Appellant | : | No. 807 WDA 2025 |

Appeal from the Judgment of Sentence Entered June 3, 2025
In the Court of Common Pleas of Beaver County Criminal Division at
No(s):  CP-04-CR-0000928-2024

BEFORE:  BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.:　　　　　　　**FILED: June 30, 2026**

Tyrik Lamar Jones appeals from the judgment of sentence of life without the possibility of parole for his conviction of first-degree murder.  We affirm.

We glean the following history from the certified record.  On January 7, 2024, Rebecca Miller was murdered.  At the time, she lived in a home owned by Cornerstone Recovery and Supports, an organization that serves people with mental health diagnoses.  The home had several security cameras and a sign-in/sign-out sheet.  On the morning of her murder, the victim attended a service at Soma Church.  Following the service, she ate the lasagna lunch provided by the church and then returned to her residence.  Shortly after 3:00 p.m., she shared a meal of meatloaf, corn, and mashed potatoes with some housemates before meeting Appellant outside of the home.

Security footage, which this court reviewed, captured Appellant approaching the home, the victim and Appellant conversing, Appellant walking in the direction of his own home on the next block, and the victim returning inside. The victim then changed clothes, grabbed a yellow backpack purse, and signed out, leaving a message that she was going for a walk. The video next showed her leaving the residence and heading in Appellant's direction with a pink coffee cup and the yellow backpack. On her way out, she texted a close friend, Aria Miller, that she was going for a walk with Appellant. At 3:53 p.m., she texted Appellant, "you coming out."

The video recordings confirmed that Appellant and the victim walked together towards a trail near Geneva College. The victim was dressed in black athletic pants and a white shirt, wearing a yellow backpack and gloves, and holding a pink coffee cup and pink umbrella. At 4:33 p.m., the two sat briefly on a rock by the trail's entrance before continuing onto it. For the next twenty-four hours, security footage captured no one else entering or exiting the trail.

The victim never returned to her residence from her walk. On the following day, the house manager tried but failed to contact her. He informed Cornerstone's director, who filed a missing person report with the Beaver Falls Police Department on January 9, 2024. The next day, Appellant visited a friend, Rochelle Burks, who was also close with the victim. When Ms. Burks asked Appellant if he had seen the victim, he first responded that he had not. He then revised his story, admitting that he and the victim had gone for a

walk on the trail near Geneva College three days prior. When asked how the two parted, Appellant claimed that he left her on the trail so that she could meditate. This claim surprised Ms. Burks, who had never known the victim to meditate.

That evening, Ms. Burks, Ms. Miller, and Soma's pastor visited the walking trail to search for the victim. The darkening evening quickly drove the searchers home, but they resumed the following morning with some additional friends of the victim. About three quarters of the way down the trail, the group recognized the victim's yellow backpack abandoned in an adjacent culvert. At the end of the trail, the group found the victim's body lying prone behind a fence with her black athletic pants and underwear pulled down to her ankles. Police officers who arrived afterwards observed several stab wounds in the victim's neck and found her backpack, coffee cup, umbrella, inhaler, and wallet near her body. Two weeks later, police officers discovered the victim's cell phone about fifteen yards away from where her body had been found. Data extracted from the phone revealed that it did not move after about 4:45 p.m. on January 7, 2024.

A medical examiner confirmed that the victim had stab wounds on the left, right, and posterior neck, incised wounds on the posterior and right neck, and blunt force trauma to the head. He concluded that she died as a result of sharp force injuries to her neck. During the internal autopsy, he discovered meat, corn, and flat noodles in the victim's stomach. He later testified that

the stomach is usually empty after two to three hours of eating, indicating that she died the evening of January 7, 2024. The subsequent investigation revealed the presence of semen in the victim's rectum, as well as other DNA evidence under her fingernails.

Appellant was questioned by law enforcement on January 11, 2024. He initially told the police that he and the victim were merely friends with no sexual history, despite the victim's desire for a more intimate relationship. He claimed that he ran into the victim while walking his dogs on the day of her murder. The police indicated that they did not believe his version of events was correct, and he revised his story. He next stated that he went to the victim's home to see if she wanted to go for a walk. The victim told him that she would come out once she finished eating, but they did not end up walking. After further conversation with the police, Appellant once again changed his story. He claimed that, once he left the victim's residence, he went to his house and took medication, causing him not to remember the rest of the day. However, he indicated, if they had gone for a walk, they would not have gone to the walking trail.

Before leaving, Appellant consented to a DNA sample via a buccal swab. The DNA found in the victim's rectum did not match Appellant's exactly, but it contained the same rare haplotype that is found in approximately one out of every 6,157 individuals. *See* N.T. Jury Trial Vol. V, 03/28/25, at 120. The DNA found underneath the victim's fingernails belonged to Elaine Daley, who

had died two months before the murder.  At trial, Detective Michael Kryder of the Beaver Falls Police Department suggested that this could have been the result of wearing a hand-me-down pair of gloves on the day of her murder. *Id*. at 125.  Based on the DNA report and the evidence already gathered, law enforcement arrested Appellant.

Appellant was charged with criminal homicide, rape by forcible compulsion, and rape by threat of forcible compulsion.  At the jury trial, Appellant refrained from testifying, and his defense presented no other witnesses.  Appellant attempted to portray another man, James Botinovich, as the victim's killer through cross-examination of the Commonwealth's witnesses, but Detective Kryder testified that Botinovich lived in Vanport, Pennsylvania, and none of his vehicles was in the area where the victim was found on the day of the murder.  *See* N.T. Jury Trial Vol. V, 03/28/25, at 126-27.  The jury convicted Appellant of first-degree murder and acquitted him of the rape charges.  He received a mandatory sentence of life imprisonment without the possibility of parole and did not file a post-sentence motion.

This timely appeal followed.  The court entered an order directing Appellant to file a concise statement of errors pursuant to Pa.R.A.P. 1925(b). After being granted two extensions, Appellant timely submitted a statement. The trial court responded with a Rule 1925(a) opinion.  On appeal, Appellant presents the following question for our consideration: "Whether the circumstantial evidence presented at [Appellant's] trial was constitutionally

insufficient to overcome his presumption of innocence and establish his identity as the perpetrator of [the victim's] killing beyond a reasonable doubt, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution?" Appellant's brief at 2.

We begin with a review of the governing legal principles. "The sufficiency of the evidence poses a question of law, subject to a *de novo* standard of review." ***Commonwealth v. Griffin-Morgan***, 347 A.3d 1133, 1136 (Pa.Super. 2025) (citation omitted). When the sufficiency of the evidence is challenged, this Court considers:

> Whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to enable the fact-finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt.

***Commonwealth v. Pledger***, 332 A.3d 29, 34 (Pa.Super. 2024) (cleaned up). The Commonwealth may prove every element of a crime "by utilizing only circumstantial evidence." ***Commonwealth v. Riley***, 302 A.3d 112, 115 (Pa.Super. 2023) (citation omitted). Upon review, we may not substitute our judgment for that of the jury or reweigh the evidence. ***See Commonwealth v. Miyares***, 320 A.3d 740, 743 (Pa.Super. 2024).

Appellant was convicted of first-degree murder pursuant to 18 Pa.C.S. § 2502(a), which provides that "a criminal homicide constitutes murder of the first[-]degree when it is committed by an intentional killing." ***Id***. (cleaned up). Appellant does not dispute that the Commonwealth established the

elements of murder, but he asserts that it failed to identify him as the perpetrator. *See* Appellant's brief at 25.

It is well settled that, "in addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes." ***Griffin-Morgan***, 347 A.3d at 1136 (cleaned up). This Court has confirmed that "evidence of identification need not be positive and certain to sustain a conviction." ***Id***. (cleaned up). Further, "direct evidence of identity is, of course, not necessary, and a defendant may be convicted solely on circumstantial evidence." ***Commonwealth v. Smyser***, 195 A.3d 912, 915 (Pa.Super. 2018) (cleaned up). In a first-degree murder case, "there is no requirement that the Commonwealth exclude all possibility that a third party may have committed the crime." ***Commonwealth v. Akers***, 572 A.2d 746, 751 (Pa.Super. 1990).

The trial court reasoned in its Rule 1925(a) opinion that there was ample evidence presented at trial to establish Appellant's identity as the perpetrator of the murder. ***See*** Trial Court Opinion, 09/17/25, at 15-19. Specifically, it found that the three surveillance videos, text messages, DNA evidence, Appellant's inconsistent statements, time of death, time and location where the victim's cell phone stopped moving, and disproving of any alternative theories of guilt was sufficient to establish Appellant as the perpetrator of the crime. ***Id***.

Appellant compares the facts of the instant case with those of two others to advance his sufficiency challenge. *See* Appellant's brief at 37-47. He first argues that the Commonwealth's evidence proving that he was the last person seen with the victim does not prove that he committed the crime. *Id*. at 33. For support, Appellant cites ***Commonwealth v. Woong Knee New***, 47 A.2d 450 (Pa. 1946), in which our High Court overturned a conviction for first-degree murder. In that case, the Commonwealth relied on claims that Woong Knee New was with the victim at 4:00 a.m. and the victim was killed between 2:30 a.m. and 4:30 a.m. *Id*. at 455. However, at trial, it was determined that the time of death was mere conjecture, and that Woong Knee New's admission that he was with the victim was the result of a miscommunication due to his limited understanding of English. *Id*. at 455, 463. Credible evidence suggested that Woong Knee New was actually in a different city at the time of the murder. *Id*. at 461. Other circumstantial evidence, such as a lack of broken windows, cigarette stumps found at the scene, a hat in the house that may or may not have belonged to the victim or Woong Knee New, and a hammer handle without Woong Knee New's fingerprints on it, suggested that Woong Knee New was not the killer. *Id*. at 453, 458.

Appellant rests his comparison to ***Wong Knee New*** on the Court's contention that, even if it was assumed that Woong Knee New was at the victim's home at the time of death, this alone was insufficient to infer that Woong Knee New was the killer because a different party could have

committed the crime. *See* Appellant's brief at 40. Appellant posits that here "the Commonwealth's evidence left substantial gaps" which amount "to reasonable doubt" because the Commonwealth "failed to thoroughly investigate and then rule out James Botinovich as a suspect," the DNA evidence was contaminated with Elaine Daley's DNA, and evidence of motive was absent. *Id*. at 54-55.

Appellant then attempts to distinguish the case *sub judice* from ***Commonwealth v. Miller***, 724 A.2d 895 (Pa. 1999). *See* Appellant's brief at 45-47. In ***Miller***, the Court affirmed a first-degree murder conviction, determining that the evidence presented was sufficient to support the conclusion that Miller committed the crime. ***See Miller***, 724 A.2d at 899. Appellant contends that Miller's DNA in the victim's vagina is "a fact that is distinguishable" from his case. *See* Appellant's brief at 46. He maintains that, unlike in ***Miller***, no forensic evidence, inculpatory statements, "murder weapon, bloody clothing, or other items of evidentiary value were ever recovered" linking Appellant to the crime. *Id*. Finally, he asserts that his case is distinct from ***Miller*** because "Miller fled the state after his wife's killing without explanation, reflecting his consciousness of guilt," whereas Appellant did not. *Id*.

Appellant's comparisons to ***Woong Knee New*** and ***Miller*** are inapt. Unlike in ***Wong Knee New***, here the Commonwealth presented evidence to rule out other potential perpetrators. For example, Detective Kryder testified

that Botinovich was not in the area on the day of the murder. *See* N.T. Jury Trial Vol. V, 03/28/25, at 126-27. Detective Kryder also addressed and dispelled the supposed "contamination event" in his testimony. *See* N.T. Jury Trial Vol. V, 03/28/25, at 125. Further, the circumstantial evidence, including the text messages, the surveillance footage, the victim's discarded items, the place the victim's body was found, and the time and location where the victim's cell phone stopped moving, confirmed that Appellant was the last person to see the victim alive. *See Commonwealth v. Robinson*, 348 A.3d 291, 298 (Pa.Super. 2025) (finding that cellular data placing the appellant's phone near the victim's apartment at the time of death was sufficient evidence to support the conclusions that the appellant was the last person to see the victim and, when considered with other circumstantial evidence, was the perpetrator).

Appellant's inconsistent statements, which unlike in *Woong Knee New* were not due to a language barrier, evinced his consciousness of guilt. *See Commonwealth v. Murphy*, 134 A.3d 1034, 1040 (Pa. 2016) (establishing that the appellant's omissions and lies to police were evidence of consciousness of guilt). Additionally, Appellant's case is akin to *Miller*, where DNA evidence reinforced the jury's finding that the appellant killed the victim. Appellant mistakenly attempts to distinguish the DNA evidence in his case from that in *Miller*, but the DNA found in the victim's rectum, although not a

perfect match to Appellant, was sufficiently close to support the conclusion that Appellant was the killer.

In sum, the evidence, viewed in the light most favorable to the Commonwealth, was sufficient for the jury to conclude that Appellant was the perpetrator. Therefore, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

6/30/2026